**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATE OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) **No. 18 CR 789** | |
| | ) **The Honorable GARY FEINERMAN,** | |
| **DENY MITROVICH,** | ) **Judge Presiding** | |
| | ) | |
| **Defendant.** | ) | |

**SUPPLEMENTAL BRIEF ON DEFENDANT'S MOTION TO DISMISS**

This Honorable Court has asked for a supplemental brief addressing specifically *U.S. v. Richardson,* 780 F. 3d 812 (2015) and *U.S. v. Loud Hawk,* 474 U.S. 302 (1986).  Neither support the dilatory procedure utilized by the prosecution.  However, review of the relevant cases does show that an alternative argument for dismissal, the Fourteenth Amendment Due Process Clause, *Pharm v. Hatcher*, 984 F.2d 783, 786–87 (7th Circ. 1993) as modified by *Richardson* as well as Federal Rule of Criminal Procedure 48 (b) are also applicable and constitute alternative, additional grounds for dismissal of the indictment.  Defendant asks that his Motion To Dismiss be modified on its face to assert the due process denial, Rule 48 (b) as well as the initial speedy trial claim.  All are issues related to pre-trial delay.

The speedy trial clause of the Sixth Amendment provides: In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  Note that it is the "accused" that is entitled to a speedy and public trial.  The constitution does not define accused, but it also certainly does not limit its application to an indictment.

1

The Supreme Court and other courts have repeatedly recognized this. The Sixth Amendment is applicable whenever an accused is "indicted, arrested, or otherwise officially accused." *Richardson,* supra.

Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to **arrest**. Until this event occurs, a citizen suffers no restraints on his liberty **and is not the subject of public accusation:** his situation does not compare with that of a defendant who has been arrested and held to answer. U.S. v. Marion, 404 U.S. 307, 321 (1971) (emp. supp.)

What the United States did to Deny Mitrovich on a Wednesday morning, May 20, 2015, was an arrest and more. It was far worse than an ordinary arrest. On that date, at 6:05 a.m. five special agents of the United States government, three members of the Federal Bureau of Investigation, three "TFO" members of the Cook County Sheriff's office and three Chicago Police officers arrived at 4926 N. Kedzie apartment 3N (see MITRO 0036)[1] in Chicago. The total number of local and federal agents on the scene was fourteen. Deny Mitrovich was handcuffed. The search continued for two hours. (MITRO 00053-4). All of the neighbors could see. Deny Mitrovich was made "the subject of public accusation" by the federal government on that date. It was accompanied by a far more specific set of serious allegations in the nature of sexual misconduct, consisting of a dozen pages, which were released from seal on August 17, 2015. The latter certainly constitute a formal charge, just one which is not an indictment, but a complaint. Speculation and embarrassment must have consumed the neighborhood resulting from the dawn appearance of fourteen officers. Equally bad was what his family learned and

---

[1] Because the record of discovery is password protected, in lieu of counsel's usual practice of attaching the relevant pages, they will be referenced. For the Court's convenience, the courtesy copy to the Court only will have the relevant pages of discovery attached.

thought.   The  sanctity of the Mitrovich home was entered.  Property was seized.  Some remain in the federal government's possession; others were returned after some months.

By contrast, on the date the prosecution contends the prosecution began for the purpose of speedy trial, Deny Mitrovich went without agents accompanying him, in street clothes, to the Dirksen building.  Bond was set.  Mitrovich was processed quietly and expediently.  No neighbors need have been made aware of this arrest.

"Protecting innocent defendants from such unfairness [unfair delay] is a core purpose of the Sixth Amendment speedy trial right. E.g., *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)." *Richardson,* supra at page 822 (opinion concurring in part and dissenting in part).  The prosecutor seeks to extend *Richardson* and *Loud Hawk* far beyond its facts, and create a new standard for what acts do not constitute the initiation of a prosecution.

Rule 48 (b), pre trial dismissal, by its terms does not require an indictment.

(b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:

> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial.

The prosecution in the instant case was delayed from May 20, 2015 until November 19, 2018, an unprecedented 1,279 days.  No semblance of an excuse for this likely historically unprecedented and unexcused delay exists.

While it takes an indictment to trigger the statutory speedy trial protections, the constitution contains no such requirement.  Case law rather states it is implicated whenever a defendant is "otherwise officially accused."  Your movant was "otherwise officially accused" in numerous ways, beginning on May 19, 2015.

## THE OFFICIAL ACCUSATION

Your movant was first "otherwise officially accused" in a lengthy document detailing the same allegations as in the later indictment, but in much greater detail. This was a document, signed by a federal agent under oath. This was then also signed by the United States Attorney. It was then presented to a judge in the Northern District, Eastern Division. It was a search warrant. The judge then authorized a search of the defendant's residence, and further authorized the seizure of numerous items of the "target's" property. This warrant was assigned a case number, 15 M 275 in the United States District Court for the Northern District of Illinois, Eastern Division. The warrant was so authorized, under seal, on May 19, 2015 (MITRO 00042, 52). It sought "Evidence, instrumentalities, and contraband concerning violation" of 18 U.S.C. ss 2252 and 2252A. The warrant was to remain under seal until August 17, 2015, pursuant to the signed request of Zachary T. Fardon, the United States Attorney (the actual signature is that of his assistant (MITRO 00050). The search warrant application, like the later indictment, notes it is in relation to 18 U.S.C. ss 2252 and 2252A possession, receipt, and distribution of child pornography (source: Discovery, MITRO 00014). It contains such matters exposing defendant to scorn and ridicule such as his alleged membership in a group which shared "preteen hardcore material…" and continues in extensive, written detail regarding the allegations (e.g. MITRO 00018-00030). The warrant was allowed to be executed by the federal government agents by the authority of a judge in the Northern District (MITRO 00042, 52).

When the search warrant was executed, Mitrovich was handcuffed (MITRO 00053). In a report dated June 4, 2015, Mitrovich was interviewed (MITRO 00068-70). On June 27, 2015 the FBI obtained Mitrovich's written consent to assume his identity for investigative purposes (MITRO 00083). On October 14, 2015 there is an FBI report of a September 2 examination of

evidence and pick up of "derivative evidence from the RCFL" the Regional Computer Forensics Laboratory (Chicago) (MITRO 00094) and other evidence picked up from there on January 15, 2016 MITRO 00106-09). After holding same for one half year, 183 days from May 20, 2015 to November 19, 2015, certain innocent property was returned to movant (MITRO 00095-96).

On March 1, 2006, in a letter the U.S. Department of Justice sought "a proffer of the testimony of … Mitrovich" pertaining the the grand jury investigation. The letter was signed on behalf of the United State's Attorney by the "Deputy Chief" (MITRO 00113). Pursuant to that, a polygraph examination took place on March 2, 2016 (MITRO 00116; 00115-00119). There is nothing in the report of that polygraph this counsel can discern which sought evidence not already known to the government regarding any individual or entity other than your movant, the defendant Deny Mitrovich.

Thereafter, the discovery record shows interviews with family members and associates on or about July 21, 2016 (MITRO 00120-128) and a summary of the investigation on July 26, 2016 (MITRO 00132). The final item within the tendered discovery is a report bearing the date of November 30, 2016 pertaining to the Vivitar camera. In that report, the reporter notes the camera was returned to the "submitting agency" on August 5, 2015 (MITRO 00134-5). This apparently was among the items returned to movant on November 19, 2015 (MITRO 00095).[2]

Argument:

The discovery record ends with a report dated 719 days prior to the formality of the indictment (MITRO 00134-5). It refers only to acts which took place a year prior. Other than that, the last activity prior to indictment took place on July 26, 2016 (MITRO 00132), 851 days prior to the formal indictment.

---

[2] The only references to a Vivitar item are to a single item described alternatively as a camera and as a camera/binoculars.

The prosecution seeks an unjustifiable extension of *Richardson* and *Loud Hawk.* Unlike every case this defendant's research has uncovered, the prosecution's delay was for no reason, let alone any reason whatsoever. The prosecution filed its indictment in violation of defendant's constitutional right without any discernable reason of whatsoever kind or nature. The prosecution has made no claim the defendant caused delay. The prosecution has made no claim any delay was necessitated, or desirable, even for administrative convenience[3].

In short, the prosecution claims that in the absence of an indictment the potential for loss of witnesses is immaterial. The existence of any and all of the many factors which caused our founding fathers to demand this in the Bill of Rights becomes immaterial whenever the prosecution chooses to cause pre-indictment delay.

*Loud Hawk* has nothing to do with pre-indictment delay. It pertains to delay following dismissal of an indictment. "After the charges against him have been dismissed, 'a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." *Loud Hawk*, supra at page 312. In contrast to the instant case, the sole arguments in favor of the application of the speedy trial right was the "Government's desire to prosecute them was a matter of public record," they had to "appear" one time in the District Court after remand, and they needed the services of a lawyer. *Loud Hawk,* supra, at pages 312-313. In fact, *Loud Hawk* and *U.S. v. MacDonald,* 456 U.S. 1 (1982) continue to show the viability of the Sixth Amendment.

In *Richardson,* supra, the 7th Circuit had to balance the complex issues of the state prosecution with that of the federal prosecution. No such balancing factors exist here. To the

---

[3] Defendant notes this is not to implicate the Asst. U.S. Attorney, Andrew Erskine, who to the best of defendant's was not involved in causing the delay. Nothing herein is to suggest otherwise as to Mr. Erskine, nor to accuse any other named individual of any form of misconduct.

6

extent *Richardson* is authority for this prosecution, it is an extreme extension of a very limited case. It is one thing for the federal government to defer to a state court. It is another thing for the federal courts to defer to the prosecutor. Such a thing is unthinkable in the abstract. It is, unfortunately, exactly what the prosecution is seeking in attempting to draw an extension of *Richardson* from deference to a state court to deference to an unknown prosecutor for an entirely opaque and unknown circumstance.

The majority opinion in *Richardson* noted the significance of a delay of three years versus the delay of 16 months in *Richardson*. "Suppose Indiana had dawdled in prosecuting Richardson and as a result not 16 months but 3 years had elapsed between the filing of the federal complaint, affidavit, and detainer and the federal indictment. A delay of such length might have seriously prejudiced Richardson's defense. The best solution in such a case might be, as suggested in Pharm v. Hatcher, supra, 984 F.2d at 786–87, to inquire whether the prejudice was so great, and not excused by any legitimate need of the government to complete a thorough investigation before indicting, that the delay had denied the defendant due process of law. See also United States v. Lovasco, 431 U.S. 783, 796–97, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Zukowski, supra, 851 F.2d at 178; United States v. Samples, 713 F.2d 298, 302 (7th Cir.1983); United States v. Sanders, 452 F.3d 572, 581– 83 (6th Cir.2006)." *Richardson,* supra at page 818.

The *Richardson* opinion is only about, and limited to, the 16 month delay vs this three and one half year delay **in the context of two competing jurisdictions. It does not allow the government in any jurisdiction to "dawdle."**

In May, 2015, three and one half years prior to the indictment, federal agents obtained a search warrant. The federal agents executed the search warrant. The search warrant application

was signed by an Assistant U.S. Attorney.  The federal authorities did not simply participate in the search as in *Richardson.*  The items recovered in the search warrant three and one half years ago are the full extent of the evidence sought to be used in the instant case.

To the extent *Richardson* is attempted to be read as meaning only an indictment implicates the constitutional speedy trial rights, it is read incorrectly.  The page 818 reference, above, clearly states even in *Richardson,* after a delay of three years the Speedy Trial rights are to be affirmed, citing *Pharm v. Hatcher,* supra and others.

Richardson therefore would mandate a hearing even if the delay, less than the delay herein, was caused not by the federal government, but by another independent jurisdiction.

As Judge Posner himself noted in the opening paragraph of *Richardson,* "The Sixth Amendment to the Constitution provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.' The brevity of the provision is striking. There is no quantification of "speedy" and no specification of when in the course of a criminal investigation or prosecution the speedy-trial clock begins to tick. But the Supreme Court has held that it does not begin to tick 'before a defendant is indicted, arrested, or otherwise officially accused.'"

## CONCLUSION

The prosecutor cannot validly say in any meaningful sense the prosecution was not "otherwise officially accused" over three years ago by the federal government itself.  He was first "otherwise officially accused" when the United States Attorney obtained a search warrant and caused *property to be seized from his residence by agents of the Federal Bureau of Investigation.*  At that time, he was "officially accused."  He was handcuffed, not pursuant to a state investigation but pursuant to the search warrant containing details of the official accusation made under oath by the United States Attorney and signed by a judge of the Northern District,

Eastern Division. He remained "officially accused" while his declared to be innocent property and other allegedly his property was held on the warrant authorized by a judge of the Northern District, Eastern Division sought by the United States Attorney. He was again "otherwise officially accused" when the United States Attorney made a proffer offer which guaranteed him his statements *could not be utilized in this prosecution against him* by the United States government. This was pursuant to, it purported, an apparently ongoing grand jury investigation. No reason was given why the United States could not have caused that grand jury, or another, to take the final step in formalizing the present felony charges. This was the dawdling Judge Posner and the 7th Circuit prohibited in *Richardson.* None of the above "otherwise officially accused" factors were present in *Richardson.* In *Richardson,* by contrast, the United States was basically little more, if anything, than a deferential observer to an ongoing, not delayed, prosecution.

   *Richardson* does not limit the initiation of prosecution to an indictment. A defendant can be "otherwise officially accused." Here, the United States was not a bystander, deferring to another jurisdiction's undelayed prosecution. Here, the United States, through its agents, sought to stretch the constitutional right to a speedy trial way past its breaking point. They "otherwise officially accused" movant at numerous times. They performed multiple acts which "otherwise officially accused" movant. However, unjustifiably, without any expressed reason whatsoever,

9

the United States deferred not the first step of an official accusation, but the very last step, the

indictment itself.  This violated the heart, the spirit, the intent, and the letter of a precious right

the states insisted upon before they would agree to form a union.

       The indictment must be dismissed.

Respectfully submitted,

_____
s/Barry M. Lewis
Attorney for defendant
500 N. Michigan Ave. Suite 600
Chicago, IL 60611
312-372-2221
Atty. No. 1646990
Blewislaw@att.net

10