UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DENY MITROVICH | No. 18 CR 789<br><br>Judge Gary Feinerman |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this response to the defendant's motion to dismiss the indictment. For the following reasons, the defendant's motion should be denied.

**I.      BACKGROUND**

On May 20, 2015, federal agents executed a search warrant at the apartment of the defendant, Deny Mitrovich, after information provided by foreign law-enforcement partners, combined with records provided by Comcast, showed that someone had used the apartment's internet connection to download and upload child pornography.[1] The defendant was present when agents arrived and he submitted for

---

[1] Agents seized a number of items from the residence, including a Western Digital External Hard Drive and a NZXT tower computer (containing three internal hard drives). Both the external hard drive and the tower were submitted to the RCFL for analysis and review. The tower itself had three internal hard drives: a Hitachi internal hard drive that had 17 images of child pornography in the "Downloads" folder, a Western Digital internal hard drive that had 16 images of child pornography in the "Recycle Bin," and a third hard drive that contained no contraband. The Western Digital external hard drive contained: (1) 1,263 images of child pornography, (2) 539 videos of child pornography, (3) 27 images indicative of child abuse, (4) 23 pages of the 170-page manual titled, "How to Practice Child Love," (5) 28

1

a voluntary interview, which was not recorded. An agent took notes during the interview and those notes were memorialized in an FBI 302 report.[2]

On March 2, 2016, the defendant submitted to a voluntary polygraph interview, the substance of which is protected by a proffer agreement.

On November 20, 2018, the grand jury returned a one-count indictment against the defendant, charging him with possessing child pornography on or about May 20, 2015 (the day of the search warrant). [3]

## II. DISCUSSION

The defendant offers three legal bases in support of his motion to dismiss the indictment: the Sixth Amendment's Speedy Trial Clause, the Fifth Amendment's Due Process Clause, and Criminal Rule of Procedure 48(b). Each of these is addressed below.

### A. Speedy Trial Clause

The defendant contends that the passage of time between the execution of the search warrant and the filing of the indictment violated his constitutional right to a speedy trial, which violation should be remedied by dismissing the indictment. As

---

pages of "The Jazz Guide" (a guide on how to "safely" practice sex with very young girls), and (6) 3 links to the Tor network. The FBI submitted the above images and videos to NCMEC, which resulted in 355 images and 94 videos being identified as containing known child victims.

[2] These materials have been provided to the defense in discovery. A copy of the FBI 302 report will be submitted to the court *in camera* contemporaneous with the filing of this response.

[3] On or about May 2, 2018, this matter was reassigned to the undersigned Assistant, following the departure of the previously-assigned Assistant from the U.S. Attorney's Office.

explained below, however, the protections of the Speedy Trial Clause did not apply to Mitrovich until he was charged, so the complained of period did not offend that right.

The Sixth Amendment to the Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." The Supreme Court has interpreted this provision to apply once "the putative defendant in some way becomes an 'accused[.]'" *United States v. Marion*, 404 U.S. 307, 313 (1971) (reversing dismissal of indictment after three-year "pre-accusation delay"). The Court has declined to extend the definition of "accused" to include "the period prior to arrest [because] [u]ntil this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." *Id*. at 321. "Even an arrest by the federal authorities is insufficient [to start the Speedy Trial clock] if the person is immediately released without federal charges being filed." *United States v. Richardson*, 780 F.3d 812, 813 (7th Cir. 2015).

Further, "[s]omeone who is only the target of a criminal investigation has no right to have the government wrap up its investigation quickly and bring charges, even if the target is aware of the investigation." *Richardson*, 780 F.3d at 813 (internal quotation omitted). "The [Speedy Trial] Clause does not, for example, limit the length of a preindictment criminal investigation even though the suspect's knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain

3

disruption in normal life." *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986) (internal quotation omitted).

In *United States v. Burgess*, the defendant was identified as a consumer of child pornography, so federal and state law enforcement officials executed a search warrant on his home. 684 F.3d 445, 448 (4th Cir. 2012). The defendant was taken into state custody on related charges and then released on bond. *Id.* at 449. The defendant failed to appear for his state case, so his bond was revoked and he was held by the state pretrial. *Id.* He was subsequently indicted by a federal grand jury on child-pornography charges a little more than a year following the search warrant. *Id.* After being convicted at his federal trial, the defendant attacked the timeliness of the prosecution on Speedy Trial grounds, arguing that too much time passed between the search warrant and the day he was served with federal charges. *Id.* at 452. The Fourth Circuit rejected this argument, holding that:

> [A] Sixth Amendment claim based on federal charges is calculated beginning when a defendant is confronted with an "arrest, indictment, or other official accusation" related to those charges. For purposes of a Sixth Amendment claim, the execution of a federal search warrant does not qualify as a federal "accusation."

*Id.* (internal citation omitted).

The same reasoning applies here. The defendant contends he has been "accused" since the execution of the search warrant on his home. But no cited case supports this position. Nor does it change the outcome if one assumes that the defendant was arrested during the search warrant but then immediately released

4

without being charged. *Richardson*, 780 F.3d at 813. To the contrary, the controlling and persuasive precedent set forth above demonstrates that the Speedy Trial Clause was inapplicable during the time in question.

### B. Due Process Clause

The defendant cites the Due Process Clause as an additional basis for relief, but he does not develop the argument. Nevertheless, this position fails as well.

To establish a violation of the Fifth Amendment's Due Process Clause based on pre-indictment delay, a defendant "must demonstrate that the delay caused actual and substantial prejudice to his right to a fair trial." *United States v. McMutuary*, 217 F.3d 477, 482 (7th Cir. 2000). "A defendant's burden to show actual and substantial prejudice is an exacting one; the showing must rest upon more than mere speculative harm." *Id*. "The defendant's allegations . . . must be specific, concrete, and supported by evidence." *Id*. (internal quotation omitted.). The Seventh Circuit has described this as a "monumental hurdle." *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994).

If a defendant succeeds in demonstrating actual and substantial prejudice, "the burden shifts to the government to show that the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason." *McMutuary*, 217 F.3d at 482 (internal quotation omitted). The government's "reasons are then balanced against the defendant's prejudice to determine whether the defendant has been denied due process." *Sowa*, 34 F.3d at 451. To constitute a due process violation, the "actual prejudice to the defendant . . . must be so substantial as

5

to outweigh the preferable deference to legitimate prosecutorial priorities and bureaucratic realities." *United States v. Williams*, 738 F.2d 172, 175 n.2 (7th Cir. 1984).

Here, the defendant has not come close to meeting his initial burden of showing—with specific, concrete, and actual evidence—that the passage of time between the execution of the search warrant and the filing of this case caused actual and substantial prejudice to his right to a fair trial.

The defendant alleges only the following prejudice: (1) he allegedly cannot recall what he said during his unrecorded interview the day of the search warrant, and (2) in the interim, a potential witness died who "could have testified to alternative ways the alleged contraband came to be on the computer[.]" Dkt. No. 17 ¶¶ 4, 9. Regarding the first point, in a case that involved a four-year delay between crime and indictment, the Seventh Circuit held that "an unsupported assertion [by the defendant] . . . that his memory of events . . . might have faded . . . is insufficient to establish actual and substantial prejudice." *United States v. Brock*, 782 F.2d 1442, 1444 (7th Cir. 1986). In the case at bar, the defendant's claim of lack of memory is likewise insufficient to establish actual and substantial prejudice. While it is believable that the defendant may not specifically recall the particular questions he was asked and the particular responses he gave,[4] the defendant must certainly recall

---

[4] The defense has not explained whether or not reviewing the FBI 302 of the interview refreshes the defendant's recollection as to the topics discussed, and admissions made, during the interview.

6

the truth or falsity of statements attributed to him. As detailed in the report of the defendant's interview, the statements attributed to him were not some easily forgettable details about where he was on a certain date and time. To the contrary, the defendant is alleged to have admitted to using the Tor browser to regularly access a website called "The Love Zone" for the purpose of uploading and downloading child pornography on a number of occasions, some of which contraband he downloaded to his personal computer for additional viewing. These memories are not the type to fade after the passing of a few years.

Concerning the defendant's second point of alleged prejudice, a court should "only conclude that the death of a witness has prejudiced a defendant where [it is] convinced that the witness would have testified, that his testimony would have withstood cross-examination, and that the jury would have found him a credible witness." *United States v. Doerr*, 886 F.2d 944, 964 (7th Cir. 1989) (quotation and citation omitted). Further, the defendant must show that the deceased witness would have been a "vital defense witness" by providing exculpatory evidence that is not cumulative of evidence offered by other witnesses who are available to testify. *McMutuary*, 217 F.3d at 482.

Here, the defendant says only that the deceased individual "could have testified to alternative ways the alleged contraband came to be on the computer," but the defendant offers no specifics as to who exactly this witness was, the basis for the witness's knowledge, and what he could have said. Nor does the defendant explain

7

why the same testimony could not be provided by the defendant's wife, who lived with the defendant at the relevant time, or an expert witness. In short, although the death of a witness can theoretically constitute actual and substantial prejudice, the defendant has not come close to meeting his burden of demonstrating that the death of this individual had such an effect.[5]

### C. Rule 48(b)

Under Federal Criminal Rule 48, the court may dismiss an indictment if unnecessary delay occurs in presenting a charge to a grand jury. Fed. R. Crim. P. 48(b)(1). "This rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Note to Subdivision (b), Notes of Advisory Committee on Rules (1944). "However, Rule 48(b) 'clearly is limited to post-arrest situations.'" *United States v. Deleon*, 710 F.2d 1218, 1223 (7th Cir. 1983). (quoting *United States v. Marion*, 404 U.S. 307, 319 (1971)).

The case at bar is not a "post-arrest situation"—that is, a situation in which the government delayed in presenting the case to the grand jury following the defendant's arrest. Accordingly, Rule 48(b) is not an appropriate basis for the defendant's requested relief.

---

[5] Because the defendant does not set forth anything near a *prima facie* case of actual and substantial prejudice, the burden does not shift to the government to show that the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason. Should the court, at some point in the future, determine that the defendant has carried his burden in this regard, the government will be happy to address those issues in a supplemental brief.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the court deny the defendant's motion.

Dated: March 14, 2019

Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Andrew C. Erskine*
Andrew C. Erskine
Assistant United States Attorney
219 S. Dearborn St., Room 500
Chicago, Illinois 60604
(312) 353-1875