```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


UNITED STATES OF AMERICA,       )
                                )
                    Plaintiff,  )
                                )
-vs-                            )   Case No. 18 CR 789
                                )
DENY MITROVICH,                 )   Chicago, Illinois
                                )   February 24, 2020
                    Defendant.  )   10:00 a.m.


                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE GARY FEINERMAN


APPEARANCES:

For the Government:      HON. JOHN R. LAUSCH, JR.
                         UNITED STATES ATTORNEY
                         BY:  MR. ANDREW C. ERSKINE
                         219 South Dearborn Street, Suite 500,
                         Chicago, Illinois  60604
                         (312)353-5300


For the Defendant:       LAW OFFICES OF VADIM A. GLOZMAN
                         BY:  MR. VADIM A. GLOZMAN
                         53 West Jackson Boulevard
                         Suite 1128
                         Chicago, Illinois  60604
                         (312) 726-9015




Court Reporter:

                  CHARLES R. ZANDI, CSR, RPR, FCRR
                       Official Court Reporter
                     United States District Court
                219 South Dearborn Street, Room 2144-G
                        Chicago, Illinois  60604
                      Telephone:  (312) 435-5387
               email:  Charles_zandi@ilnd.uscourts.gov
```

1 (Proceedings heard in open court:)
2     THE CLERK: 18 CR 789, USA versus Mitrovich.
3     MR. ERSKINE: Good morning, your Honor. Andrew
4 Erskine on behalf of the United States.
5     MR. GLOZMAN: Good morning, your Honor. Vadim
6 Glozman on behalf of Mr. Mitrovich, who's present to my left.
7     THE DEFENDANT: Good morning.
8     THE COURT: Good morning. We're here on a
9 fully-briefed motion to compel. I'm wondering what the
10 government's thoughts are on the matters that were argued in
11 the defendant's reply brief.
12     MR. ERSKINE: Sure, your Honor. The short response
13 is that -- so, the government disagrees with a lot of the
14 representations of how Tor works within -- not generally
15 speaking, but some of the finer points. But that's kind of
16 neither here nor there, because the sort of system or the
17 series of steps described in the reply brief don't apply to
18 what happened in this case, as sworn to in the affidavit based
19 on information provided by the foreign law enforcement.
20     And that is this was -- what was described in the
21 reply brief was just talking about how you access different
22 Internet sites, how you were going to stay within the confines
23 of the Tor browser. But as is sort of made plain in the
24 affidavit, you know, as repeated in the government's response,
25 this was a situation where there was a link to download a

1  video file and then a button -- then a prompt warning the
2  user, here the defendant, that this is going to open up
3  outside of the top -- Tor browser.  And I'm paraphrasing.
4  Whatever language is in the response is the language in the
5  response.  And then they click that link and proceed and open
6  the thing outside of the Tor browser; and it plays, and it
7  connects over a public connection.
8  　　　　　So, that's really not addressed.  It's not a matter
9  of going to YouTube and watching videos.  We're talking about
10 opening a native file outside of the Tor browser.  That's why
11 it's different.  That's why this was not addressed at all in
12 the reply.
13 　　　　　So, at the end of the day, you still have a
14 situation -- another point I'll make is the question was:  Why
15 wouldn't everyone do it this way?  Why do the NIT?  Why get
16 the warrant if they can just do it this way?  And because the
17 answer is -- I'm speculating here.  I don't know.  I'm
18 speculating, but my belief of what the answer is is that the
19 vast majority of targets, when they see that prompt saying
20 this video is going to take you off of Tor and open you
21 outside of Tor, they wouldn't click that.  They'd say, "No,
22 thank you."  But in this case, that's not what --
23 　　　　　THE COURT:  I'm not sure that's what the warning on
24 the link said.  The warning just said you're going to go to an
25 external website.

1          MR. ERSKINE: Exactly.

2          THE COURT: It doesn't say anything Tor or not Tor.
3 I'm not sure that matters, but as a factual -- if we're going
4 to accurately portray what happened here, the warning wasn't
5 you were going to go off of Tor and your IP address is going
6 to be revealed. That's not what the warning said.

7          MR. ERSKINE: Absolutely not, no. That's a fair
8 point.

9          Another distinction I'll draw between the NIT context
10 and this context is that the -- in the NIT frame -- framework,
11 you know, that is an FBI-conducted operation, and the FBI
12 cannot itself distribute child pornography.

13          So, as was referred to in the reply brief and as is
14 described in the cases, these are situations where people are
15 going to a website and are finding like an error page, you
16 cannot access. And then it was sort of in that situation
17 that, you know, the NIT program has to do its thing to un --
18 to unveil the public IP address of the target; whereas, again,
19 this is a different context where they are serving up -- the
20 foreign government was serving out the actual child
21 pornography video, linking to it, making it available, and
22 then it opens up; and then through the natural -- not natural,
23 but through the configuration of that video file, just
24 connects over a public IP address.

25          So, that just -- I say all this in response to the

1 argument in the reply that it must be the case that they used
2 the NIT approach because nothing else is possible. And I'm
3 doing sort of my best to look at the records and the cases and
4 sort of argue it, and I believe defense counsel is as well;
5 but at the end of the day, I think that the -- the basis for
6 the allegation that it must be, the only explanation is that
7 an NIT was used is just not well-founded.
8 But what we do know --
9 THE COURT: I'm not sure you're capturing what the
10 reply brief is actually arguing.
11 MR. ERSKINE: Okay. Fair enough. But what the --
12 THE COURT: I mean, the initial motion, the
13 principal, if not exclusive, argument was Mr. Mitrovich was
14 tricked into clicking on the link and didn't voluntarily give
15 up his IP address. And I was skeptical about that argument,
16 although my mind was open.
17 That argument is not made, at least not at length, in
18 the reply brief. The reply brief, in my mind, completely
19 switches gears and makes another argument, which is malware
20 was used to infect Mr. Mitrovich's computer.
21 And so let me ask you this: If malware was -- if the
22 law enforcement authorities in Australia had malware put on
23 Mr. Mitrovich's computer when he clicked on that link, would
24 that be a Fourth Amendment search?
25 MR. ERSKINE: Your Honor, as I stand here, I don't

1 know.

2 THE COURT: I think maybe -- and again, I don't know
3 what the answer is, either, but I can see an argument based on
4 *Jones* that putting malware on somebody else's computer is the
5 functional equivalent of a physical trespass, the kind of
6 physical trespass that was at issue in *Jones versus United*
7 *States*, like putting a GPS monitor on somebody's car.

8 And again, I don't know whether that analogy holds or
9 not as a matter of Fourth Amendment law, but I can see that
10 argument being made.

11 But the logically anterior question in order to get
12 to that legal issue is: Was malware put on Mr. Mitrovich's
13 computer? And I didn't hear you address that issue.

14 MR. ERSKINE: It is my understanding, based on the
15 information that was conveyed by the foreign government, you
16 know, as set forth in the affidavit, that that is not how this
17 works. Malware was not downloaded onto Mr. Mitrovich's
18 computer. It was as simple as set forth in the affidavit.

19 THE COURT: Okay. What affidavit? Was the affidavit
20 attached to any of the papers? The reason I ask is I have not
21 seen the affidavit because I don't believe it was -- I don't
22 believe it was in the record.

23 MR. GLOZMAN: I don't believe so, either.

24 THE COURT: Is it maybe -- is there a criminal
25 complaint in this case that it was attached to?

1 MR. ERSKINE: It's just the search warrant affidavit.
2 I apologize. It was referenced, I believe, in both the
3 briefs, but I can tender a copy right now.
4 THE COURT: Do you have a copy?
5 MR. GLOZMAN: Not with me, but I know what it says.
6 THE COURT: I don't mean with you now. Have you been
7 given a copy?
8 MR. GLOZMAN: Yeah. And that's what my factual
9 predicate is based on.
10 THE COURT: Let me get a copy of this.
11 (Tendered.)
12 MR. GLOZMAN: Your Honor, if I may just clear
13 something up, the way I read both that -- and it's not only
14 that. That actually doesn't include everything. There are a
15 number of 302s that talk about additional steps taken. We can
16 tender that to the Court also.
17 But what happened was the United States was actually
18 using this software. They identified the website TLZ. They
19 knew they couldn't use it, so it actually says in there they
20 gave the software to New Zealand, so the New Zealand
21 government was using a software given them by the United
22 States. They set this up.
23 Now, the way the Tor network works, your Honor, and I
24 have this in our reply --
25 THE COURT: If you're arguing as to what happened,

1  I think it's -- you're saying there was malware put on
2  Mr. Mitrovich's computer.  You're saying there wasn't.  Any
3  argument on that is going to go in one ear and out the other
4  just because I don't -- I have nothing from the government
5  giving the government its side of the story.  I have your side
6  of the story, and I know why you're saying there's malware on
7  Mr. Mitrovich's computer.
8  　　　　　MR. GLOZMAN:  I understand.
9  　　　　　THE COURT:  So, I could basically see the government
10 making two arguments in response to your reply brief.  The
11 first is even if malware were -- the first would be a legal
12 argument.  Even if malware had been placed on Mr. Mitrovich's
13 computer as a means of getting his IP address, it wouldn't
14 matter because that's not a Fourth Amendment search, so we
15 don't even need to have discovery on that.
16 　　　　　The second argument, which is an alternative
17 argument, and not mutually exclusive to the first, is a
18 factual one, which is, in point of fact, no malware was
19 placed on Mr. Mitrovich's computer.
20 　　　　　All I have are the -- I know you're giving me your
21 best understanding, but we don't really have anything in the
22 record that gives the government's -- that supports the
23 government's view on that perhaps logically anterior question.
24 　　　　　MR. ERSKINE:  Sure.  And, your Honor, I had
25 contemplated asking leave to file a surreply.

| | |
|---|---|
| 1 | MR. GLOZMAN: No objection. |
| 2 | THE COURT: I think that would be best. Because it |
| 3 | really was a new argument -- and I'm not being pejorative on |
| 4 | that; but it's an argument that was very well developed in the |
| 5 | defendant's reply brief, and I don't think you could have |
| 6 | anticipated that argument from the motion. So, I think it |
| 7 | would be best if I give you a chance to respond to what really |
| 8 | is a new argument that's been brought to the table. |
| 9 | How long do you need? |
| 10 | MR. ERSKINE: Your Honor, could I -- just in case I |
| 11 | need to reach out to anyone in support of this, could I have |
| 12 | three weeks? |
| 13 | THE COURT: Any objection to that? |
| 14 | MR. GLOZMAN: He can have a month if he wants to. |
| 15 | THE COURT: Why don't we say three weeks. |
| 16 | THE CLERK: March 16th. |
| 17 | THE COURT: And then maybe you'll want to -- we could |
| 18 | come in either later in the week of the 16th, or I can give |
| 19 | you a chance to address the government's submission in |
| 20 | writing. |
| 21 | MR. GLOZMAN: Do you want -- if I could suggest maybe |
| 22 | do a status date about two weeks after, and if I want to file |
| 23 | something, I'll file something in the interim, between when |
| 24 | the government files something and the status date. |
| 25 | THE COURT: That's fine. We can come in during the |

1 week of March 30th.

2 THE CLERK: How about April 1st.

3 MR. GLOZMAN: That's fine with me.

4 THE CLERK: 9:45 a.m.

5 MR. ERSKINE: That works.

6 THE COURT: So again, just to be clear, it could
7 be -- if you grant his premise, factual premise that there was
8 malware placed on Mr. Mitrovich's computer, maybe that's not a
9 Fourth Amendment search; and then you could say we don't need
10 discovery on whether there was malware because it wouldn't
11 matter because it wasn't a Fourth Amendment search anyway.

12 And/or, you can argue, "In point of fact, this is how
13 it worked, and there was no malware put on Mr. Mitrovich's
14 computer." And then I have to decide whether the record is
15 clear enough from the papers in front of me that we don't need
16 discovery on that issue. Or maybe there's a third and a
17 fourth argument that you can think of that I'm thinking of.

18 MR. ERSKINE: Right, sure. And discovery could be
19 something short of the specific things that defense counsel is
20 asking for.

21 THE COURT: Yeah, maybe.

22 MR. GLOZMAN: That's fine. At the end of the day if
23 they want to concede there was malware and we have to argue
24 the Fourth Amendment, that's fine, and they don't have to give
25 it over.

1 THE COURT: Right.

2 MR. ERSKINE: I'll file something.

3 THE COURT: We'll see what happens. This is a very
4 interesting issue. I appreciate both sides' briefs. They
5 were both very, very well done, and this is a relatively new
6 and very interesting area of the law, so I appreciate your
7 efforts.

8 MR. ERSKINE: So, your Honor, the government would
9 move to exclude time through and including the next date, in
10 light of the pending motion.

11 MR. GLOZMAN: No objection.

12 THE COURT: Without objection, time is excluded
13 through our next date. Thanks.

14 MR. ERSKINE: Thank you, your Honor.

15 THE DEFENDANT: Thank you, your Honor.

16 (Which were all the proceedings heard.)

17 CERTIFICATE

18 I certify that the foregoing is a correct transcript from
19 the record of proceedings in the above-entitled matter.

20

21 /s/Charles R. Zandi                February 8, 2023

22 Charles R. Zandi                   Date
   Official Court Reporter
23

24

25