```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION


  UNITED STATES OF AMERICA,       )
                                  )
              Plaintiff,          )
                                  )
  -vs-                            )  Case No. 18 CR 789
                                  )
  DENY MITROVICH,                 )  Chicago, Illinois
                                  )  March 1, 2021
              Defendant.          )  10:45 a.m.


              TRANSCRIPT OF TELEPHONIC PROCEEDINGS
              BEFORE THE HONORABLE GARY FEINERMAN


  APPEARANCES:

  For the Government:        HON. JOHN R. LAUSCH, JR.
                             UNITED STATES ATTORNEY
  (via telephone             BY:  MR. ANDREW C. ERSKINE
   conference call)          219 South Dearborn Street, Suite 500,
                             Chicago, Illinois  60604
                             (312)353-5300


  For the Defendant:         LAW OFFICES OF VADIM A. GLOZMAN
                             BY:  MR. VADIM A. GLOZMAN
  (via telephone             53 West Jackson Boulevard
   conference call)          Suite 1128
                             Chicago, Illinois  60604
                             (312) 726-9015




  Court Reporter:

              CHARLES R. ZANDI, CSR, RPR, FCRR
                    Official Court Reporter
                 United States District Court
            219 South Dearborn Street, Room 2144-G
                    Chicago, Illinois  60604
                  Telephone:  (312) 435-5387
              email:  Charles_zandi@ilnd.uscourts.gov
```

1 (Proceedings heard in open court:)
2     THE COURT: Good morning, Jackie.
3     THE CLERK: Good morning, Judge.
4     18 CR 789, USA versus Mitrovich.
5     THE COURT: Who do we have for the government?
6     MR. ERSKINE: Good morning, your Honor. Andrew
7 Erskine on behalf of the United States.
8     THE COURT: And defense counsel?
9     MR. GLOZMAN: Good morning, your Honor. Vadim
10 Glozman on behalf of Deny Mitrovich. I'm not sure if his
11 presence is waived, but if it's not, I'd ask that it be waived
12 for today.
13     THE COURT: Any objection?
14     MR. ERSKINE: No objection.
15     THE COURT: So, the defendant's presence is waived.
16 We have a fully briefed motion to dismiss or in the
17 alternative to suppress evidence. The defendant was last
18 heard in writing, so let me ask the government if there's
19 anything in the reply brief you'd like to respond to orally
20 this morning, I want to give you that chance. Also, if there
21 are any arguments that you'd like to make or emphasize, I want
22 to give you that chance as well.
23     MR. ERSKINE: Thank you, your Honor. No, the
24 government will rest on the papers.
25     THE COURT: So, let me ask you, in terms of this good

1  faith effort standard that you're proposing, do any cases from
2  anywhere in the country apply that standard in the context of
3  Criminal Rule 16, a discovery obligation, or a *Brady* turnover
4  obligation?
5      MR. ERSKINE: Well, your Honor, as the -- in the *Lee*
6  case, as I think we mention in our brief, the materials sought
7  after are what you might describe as like a *Brady*-type
8  material or a Rule 16-type material, that they were trying to
9  obtain materials that the defense considered pertinent to
10 their Fourth Amendment arguments in that case.
11     So, that's the primary case in which you do see it,
12 you know, in the context of those kinds of documents.
13     THE COURT: So, what do you say to the defendant's
14 argument that I ought not to adhere to the standard in *Lee*
15 because the Second Circuit has a different joint enterprise --
16 joint enterprise law than the Seventh Circuit?
17     MR. ERSKINE: The -- and I apologize. I don't recall
18 that argument or the understanding that there's a different
19 joint investigation standard between the two circuits.
20     THE COURT: All right. Well, maybe -- maybe I --
21 maybe I saw something that wasn't there.
22     MR. GLOZMAN: No, your Honor, that was in our reply.
23     MR. ERSKINE: And I'm not suggesting that it wasn't
24 there. I'm just saying that I don't recall it.
25     THE COURT: I see. All right. Anything further from

1  the government?
2  MR. ERSKINE: No, your Honor.
3  THE COURT: Defendant, any arguments that you'd like
4  to emphasize this morning?
5  MR. GLOZMAN: Judge, we'll rest, but I just -- I want
6  to mention one thing about the *United States versus Lee*. I
7  think aside from there being a different joint investigation
8  standard in the Second Circuit than in the Seventh Circuit,
9  the other difference in *Lee* is that there, a motion to compel
10 the discovery was never granted. Here, one was granted.
11 So, that appeal had to do with the court abusing its
12 discretion for not granting a motion to appeal -- or compel,
13 not for the government not complying with an order saying that
14 it falls under *Brady* or falls under Rule 16.
15 And second of all, Judge, in *Lee*, the court found
16 separately that the discovery that the defendant was seeking
17 would not apply to any sort of constitutional challenge to the
18 case. It said specifically that the statements that Lee was
19 looking for would not rise to a Fourth Amendment challenge;
20 but here, your Honor already found that it does.
21 THE COURT: I found that --
22 MR. GLOZMAN: So we're kind of comparing apples and
23 oranges here.
24 THE COURT: I found that it might.
25 MR. GLOZMAN: You found that it might; but for

1  purposes of granting the motion to compel, you found that
2  if -- and the government didn't dispute this, that if the --
3  or if the software worked how we said it would work, it would
4  be a Fourth Amendment violation should there be a joint
5  investigation past the *prima facie* finding that you already
6  made for that.
7  THE COURT: All right. So, why does it matter that
8  the Second Circuit has different joint investigation standards
9  than the Seventh Circuit for purposes of deciding whether I
10 ought to apply the good faith effort standard here?
11 MR. GLOZMAN: My understanding of the Second Circuit
12 joint investigation standard is that it's a higher burden to
13 meet. So, there was never a finding that that burden was met
14 for the purposes of discovery obligations. Here, there is a
15 finding that we met the standard for discovery obligations on
16 the government.
17 So, your Honor already knew, based on the
18 government's filing, that the source code wasn't in their
19 possession. I think that was clear from the beginning. And
20 your Honor, based on the Seventh Circuit law, decided that
21 obligation is imparted on them because we only need to make a
22 *prima facie* showing for it, and that's what your Honor found
23 that we made.
24 THE COURT: I think you may be mixing metaphors. You
25 may be reading something into my opinion that might not have

1 been there.

2 Could you -- could you point to what exactly you're
3 referring to in my opinion and then explain what you are
4 deducing from that portion of my opinion?

5 MR. GLOZMAN: Yeah. Let me pull it up, your Honor.

6 I think what I'm trying to say is that for the
7 purposes of granting the motion to compel and imparting a
8 discovery obligation on the government, your Honor had to
9 make a finding that it was a *prima facie* joint investigation.

10 THE COURT: Right.

11 MR. GLOZMAN: Which I think is undisputed that you
12 did make that finding. That's why the motion to compel was
13 granted. So, by us meeting that burden of the *prima facie*
14 joint investigation, there doesn't need to be anything else
15 proven for us for the government to have to comply with their
16 discovery obligations.

17 THE COURT: Okay. So, what -- but that begs the
18 question. Yes, the government has to comply with its
19 discovery obligations. The question is: What are the
20 government's discovery obligations?

21 You say that the obligation is to turn over the --
22 the source code come hell or high water, and the government
23 is saying its obligation is to make a good faith effort to
24 obtain the source code from New Zealand.

25 What in my opinion -- and I think the answer is

1  nothing, but maybe there is something. What in my opinion
2  speaks to that question?
3  MR. GLOZMAN: I guess it was my position that it's
4  implied by you compelling the government to do it. If the
5  government said prior to this, "Oh, we already tried and we
6  couldn't. We made a good faith effort," that's something your
7  Honor could have considered.
8  But they didn't flat-out say that. They just said,
9  "We didn't have it. This was an arm's length investigation."
10  And your Honor said that's not what -- at least how I
11  read it is, "Well, at this point, it's a *prima facie* showing
12  that you were working together, and that's why you have to
13  turn over this discovery."
14  THE COURT: Yeah. But didn't I say that the
15  government shall produce the discovery subject to any targeted
16  objections to the production of specific material?
17  MR. GLOZMAN: You did say that, your Honor.
18  THE COURT: So, doesn't that encompass at least
19  theoretically a situation where the government says, "Yeah,
20  we would turn it over if we had it; but we asked for it, and
21  New Zealand said no, so we can't turn it over"?
22  MR. GLOZMAN: Well, that kind of puts Mr. Mitrovich
23  in a bind, your Honor, that the government can charge him
24  here, your Honor could find that this discovery falls within
25  the scope of something they have to turn over; but they just

1  get to shrug their shoulders and say, "Too bad. We can't get
2  it for him, and now he can't defend himself."
3      And why is that good faith?
4      THE COURT: I think that argument goes to the
5  substance of the actual question here, which is: What is the
6  government's discovery obligation? Is it no matter what, the
7  government has to turn it over or face the consequences, or is
8  the -- is the standard the government just has to make a good
9  faith effort to get it from the entity or country or sovereign
10 that has it; and if the government gets it, great, if the
11 government doesn't get it, then the government's done all it's
12 required to do?
13     MR. GLOZMAN: I think what's clear from both our
14 filings and the government's is that there's no exact answer
15 to this. We've had to draw parallels from cases that have
16 similar qualities to this one.
17     But I think it's our position that by your Honor
18 entering an order to compel them to, they have to do it one
19 way or the other, and good faith is not enough. I think *Brady*
20 stands for the good faith is not enough.
21     THE COURT: Right. And so -- but you agree that the
22 good faith effort standard applies for *Jencks* materials,
23 right?
24     MR. GLOZMAN: I think based on the Second Circuit
25 case law. I'm not sure it applies in the Seventh Circuit.

1  And I also don't know if *Jencks* goes directly to the heart of
2  any kind of constitutional challenge.
3      THE COURT: But isn't the Jencks Act based on the
4  *Jencks* case?
5      MR. GLOZMAN: Yes.
6      THE COURT: And was the *Jencks* case constitutional or
7  something else?
8      MR. GLOZMAN: It was constitutional, but I don't know
9  if it's the same as the constitutional challenge of the motion
10 to suppress.
11     THE COURT: So, you're acknowledging, though, that
12 the Jencks Act codifies by statute a constitutional obligation
13 that the Supreme Court imposed in the *Jencks* case?
14     MR. GLOZMAN: I would agree with that, but again, I'm
15 not sure it's the same as a *Brady* obligation for a Jencks Act
16 because *Brady* says in the case itself that good faith is not
17 enough.
18     THE COURT: Right. But why should the constitutional
19 standard or obligation imposed by *Brady* be different in this
20 context than the constitutional obligation imposed by *Jencks*?
21     MR. GLOZMAN: Your Honor, with the Second Circuit
22 case law that the government cited, I still think there is a
23 significant difference in that there was no motion to compel
24 there granted, and that they made their arguments that they
25 wanted to argue, and the court said, "Well, that's not enough

1 for the defendant to get a motion to compel granted like he
2 wants to."
3       Here, they made all of their arguments, and they
4 could have made this good faith effort argument before if they
5 wanted to.  They can't say now, "Well, we can't get it, and
6 let's think of a new argument."
7       And the order is already entered.  They didn't ask
8 you to reconsider.  And the order encompasses constitutional
9 guarantees that Mr. Mitrovich has.  And I think your Honor
10 agreed that we met whatever burden we needed to meet to have
11 the government turn this over.  So now they come and make
12 another excuse for why they can't turn it over, and I don't
13 think that's what the case law stands for.
14       THE COURT:  I think you may have lost the thread
15 here.  It seems like now you're pivoting to a waiver argument,
16 which is --
17       MR. GLOZMAN:  Well --
18       THE COURT:  -- if the government didn't have it, it
19 should have said so in response to the motion to compel; and
20 since it didn't, it's either use it or lose it.
21       My question is different.  My question is:  *Brady*
22 is -- derives from the Constitution.  *Jencks* derives from the
23 Constitution.  There have been a number of cases, not just
24 *Lee*, but other cases holding that the good faith effort
25 standard applies in the *Jencks* context.  Why should a

1  different standard apply in the *Brady* context, given that both
2  *Brady* and *Jencks* ultimately derive from the Constitution?
3       MR. GLOZMAN:  I'm trying to think of the right way to
4  answer this, Judge.  I think the case law speaks for itself,
5  and I think *Brady* evidence encompasses actual evidence that
6  can be used to develop a defense, instead of just statements
7  made by other people, which are pretty much just subject to
8  cross-examination at a trial.
9       And no one is saying that -- I think that's the major
10 difference here, Judge.  Here, we can't even get a pretrial
11 defense put together without the *Brady* evidence, and the
12 Jencks Act applies to statements that were made that the
13 witness would testify to regardless, if they were to testify.
14      THE COURT:  All right.  Any other arguments that
15 you'd like to make?
16      MR. GLOZMAN:  No, your Honor.  We'll rest on what's
17 written.
18      THE COURT:  All right.  Government, anything you'd
19 like to add at this point, given my discussion with defense
20 counsel?
21      MR. ERSKINE:  Your Honor, we would agree that the
22 good faith rule should apply in this context, that there's a
23 sufficient basis developed in the case law.  In the *Jencks*
24 context, there's the *Lee* case showing its discussion in a
25 broader context.  And as your Honor points out, there is sort

1　of no specific basis to distinguish between why good faith
2　would suffice with regard to *Jencks* and the constitutional
3　underpinnings there versus the *Brady* context or the Rule 16
4　context.
5　　　　So, we believe that the Court should apply that rule
6　and on that basis deny the motion.
7　　　　THE COURT: Yeah, I think -- you know, I think what
8　Mr. Glozman may have been arguing, and even if he weren't, I
9　would ask you this. Maybe an argument could be made that
10　*Brady* is more weighty than *Jencks*, and maybe that would
11　justify having the good faith effort standard for *Jencks* --
12　in the *Jencks* context but not in the *Brady* context.
13　　　　What are your thoughts on that possible argument?
14　　　　MR. ERSKINE: Well, your Honor, this would be the --
15　your Honor would be the first, you know, court to consider
16　that, as far as I can tell, or if you were to rule that way,
17　to rule -- to assert that rule.
18　　　　I mean, I suppose it's a -- it's a -- sort of a
19　subjective analysis. Obviously, *Brady*, the underpinnings of
20　*Brady* are this idea of, you know, favorable evidence that the
21　government possesses and, you know, how that must be turned
22　over to the defense. But, you know, this is a context where
23　you don't really -- we're talking about legal fictions and
24　constructions, whether or not something can be deemed to be
25　in the possession of the U.S. government.

1    And so it's not even clear that the kind of situation
2 we're in is the same sort of, I don't know, heavy or weighty
3 *Brady* situation that might dictate a difference in an
4 applicable rule.
5    But I guess the short answer is that there's really
6 no -- I have not come across any sort of basis for giving
7 preference to the constitutional requirement under *Brady* as
8 compared to other constitutional rules.
9    And, you know, for example, like with -- well, I
10 don't know. I would have to give it some more thought, but I
11 just -- for the reasons that I just said, I don't think that
12 it -- I don't think there's a basis to make that kind of
13 distinction.
14    THE COURT: All right. Yeah, and these are all very
15 hard questions; and I think whatever I rule here, I might be
16 forging new ground.
17    Anything else from the government?
18    MR. ERSKINE: No, your Honor.
19    THE COURT: Okay. Let me -- and I'm going to ask
20 defendant, if you -- I'm going to give you the last word; but
21 before I do that, let me ask you, assuming that the good faith
22 effort standard applies in this case, has the government met
23 it, and if not, why not?
24    MR. ERSKINE: I'm sorry. Are you talking to the
25 government or the defense?

1  THE COURT: No, I'm talking to the defendant.

2  MR. GLOZMAN: Judge, I think we made the concession
3  to the government that what they did would be fine for good
4  faith purposes. I think we both agree that any further effort
5  they make will be futile.

6  That's not what I'm basing our position in. I'm not
7  suggesting they're acting in bad faith. I'm just suggesting
8  that in this context, their good faith effort is not enough to
9  meet their obligations.

10  THE COURT: Okay. Anything else? And again, maybe
11  the answer is no, but I wanted to give you the last word if
12  you'd like it.

13  MR. GLOZMAN: Your Honor, I've given this a lot of
14  thought, and I think about as articulate as I can be is in my
15  motion and the reply. There is nothing on point, and I think
16  that that's what makes this a difficult position not only to
17  put forth to your Honor but to kind of articulate in a way
18  that I'm not prepared to right now. So, we'll rest on what's
19  written.

20  THE COURT: You both did great. I really appreciate
21  your briefs, and I appreciate your presentations this morning.
22  And it's a hard issue -- a hard question, and that's why I had
23  what I think were hard questions for both sides.

24  So, I'm going to take this matter under advisement.
25  I'll issue a ruling as soon as I can.

1         Jackie, why don't we set this for a status hearing
2 during the week of, let's say, April 19.
3         THE CLERK: Sure. How about April 20th, 9:15 a.m.
4         MR. GLOZMAN: That works for the defense.
5         MR. ERSKINE: That works --
6         THE CLERK: I'm sorry, 9:45 a.m. I'm so sorry.
7         MR. GLOZMAN: That still works for the defense.
8         MR. ERSKINE: And for the government.
9         THE COURT: Okay. Anything further from the
10 government?
11         MR. ERSKINE: Just to exclude time in light of the
12 pending motion, your Honor.
13         MR. GLOZMAN: No objection.
14         THE COURT: Okay. Without objection, time is
15 excluded.
16         Anything further from the defendant?
17         MR. GLOZMAN: No, your Honor.
18         THE COURT: Okay. Thanks to both sides. Stay safe.
19         MR. ERSKINE: Thank you. You, too.
20         MR. GLOZMAN: Thank you.
21   (Which were all the proceedings heard.)
22                     CERTIFICATE
    I certify that the foregoing is a correct transcript from
23 the record of proceedings in the above-entitled matter.
24 */s/Charles R. Zandi*             *February 8, 2023*
25 _____     _____
    Charles R. Zandi                 Date
    Official Court Reporter